PATTERSON, Judge.
The State of Alabama appeals from a ruling by the Circuit Court of Mobile County granting Richard Scott Radford’s motion to suppress the results of a urine drug screen test.
The defendant is charged with two counts of murder, in violation of § 13A-6-2, Code of Alabama 1975. Specifically, it is alleged that he drove his car while under the influence of benzoylecgo-nine, a metabolite of cocaine, and struck two pedestrians, causing their deaths.
The record indicates that the defendant was transported to the emergency room of Springhill Memorial Hospital for treatment and that several Mobile police officers arrived at the hospital shortly thereafter. The emergency room physician, Dr. Travis Goodloe, attended to defendant’s injuries, which included a fractured pelvis, a lacerated knee, and various abrasions and bruises to the face. Dr. Goodloe observed that the defendant “didn’t seem to know what was going on” and that “he was acting kind of spacey as if he had an altered mental state.... ” At some point during the treatment process, Dr. Goodloe ordered a urine drug screen test, which revealed the presence of benzoylecgonine in the defendant’s system. The defendant was subsequently indicted on two counts of murder, and the state obtained the results of the urine drug screen test by subpoena. Thereafter, the defendant moved to suppress the results of the test, and the trial court conducted a hearing on that motion. The trial court granted the defendant’s motion, and the state appeals from that ruling.
The record of the suppression hearing does not conclusively reveal the basis for the trial court’s ruling; however, it is apparent that the bulk of the defendant’s argument centered upon the question of whether Officer Hendrix, the investigating officer present at the hospital, caused Dr. Goodloe to order the urine drug screen test. Within that argument, the defendant asserted the requirements of Alabama’s Implied Consent Statute, § 32-5-192, Code of Alabama 1975, as the basis for the proposition that a defendant must be arrested before a drug test is conducted if the results of such a test are to be admissible into evidence. However, the defendant’s reliance on that statute is misplaced in this case, for it provides, in pertinent part, the following:
“Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given his consent, ... to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle on the public highways of this state while under the influence of intoxicating liquor.” (Emphasis added.)
Clearly, the plain language of this statute refers to alcohol only. “[W]e are bound to *1287 consider the intent of our legislature in enacting statutes, and to give credence to the plain language utilized by that body.” Ex parte Love, 513 So.2d 24, 29 (Ala.1987). The exclusive reference, in this statute, to alcohol means that the statute is applicable to the testing of motorists for the detection of alcohol and nothing else; therefore, it is inapplicable to the present issue.
The primary question here is whether the test was conducted because of some police action, for if it was not conducted pursuant to police action, the Fourth Amendment protection does not apply. See Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921) (wherein the Court announced that the Fourth Amendment’s protection applies only to governmental action). Even when the physical act of searching is by a private person, as in the instant case, “it may generally be said that the search is still governmental action if it was instigated by the authorities or the authorities have participated in the search in some way.” 1 W. LaFave, Search and Seizure § 1.8(b) (1987). In reviewing the question before us, we are mindful that, in the absence of evidence establishing that a ruling by the trial court, on a motion to suppress, was clearly erroneous or palpably wrong, it will not be disturbed on appeal. State v. Phillips, 517 So.2d 648 (Ala.Cr.App.1987).
The record of the instant suppression hearing reveals that only Dr. Goodloe and Helen Hon, a nurse at the hospital, testified. Dr. Goodloe testified that he suspected that the -defendant was under the influence of some type of chemical. He contacted Dr. Zarzour, the orthopedist who would be continuing the defendant’s treatment, and they both agreed that a urine drug screen test should be conducted. Dr. Goodloe stated that it was necessary to run such a test because “[i]t helps rule out other possible causes for similar behavior.” Clearly, Dr. Goodloe’s testimony establishes that the test was ordered in the normal course of the treatment process and not as a result of any police action. Even though Dr. Goodloe later testified that the police officer “made it clear that she thought he [the defendant] was under the influence of some chemical and she would like very much for us [the hospital] to examine that further,” the record does not indicate that this had any influence on the decision to conduct the urine drug screen test. In fact, when asked “[w]hat if anything did you do in order to ... assist Officer Hendrix in regards to her suspicion?,” Dr. Goodloe stated, “I didn’t do anything to assist Officer Hendrix.”
When a test is performed for medical purposes and not as a result of a request by law enforcement officers, there is no requirement that the subject tested be placed under arrest before the test is conducted. Veasey v. State, 531 So.2d 320 (Ala.Cr.App.1988), cert. denied, 531 So.2d 323 (Ala.1988). Although this proposition was directed, in Veasey, at the arrest requirement of the Implied Consent Statute, it is also applicable where an independent hospital drug test is conducted and the results are subsequently obtained by subpoena. We find that the instant drug screen test was performed in the normal course of the treatment process and that it should not have been suppressed based on this argument.
The defendant also argues that the results of the urine drug screen test were impermissibly, tainted because they were subpoenaed after another sample had apparently been illegally seized and tested. The defendant contends that Officer Hendrix obtained a urine sample, other than the one tested by the hospital, on the day of the accident, without his consent and in violation of his constitutional protection against unreasonable searches and seizures. Although there was no testimony during the suppression hearing that sheds any light on the circumstances surrounding Officer Hendrix’s alleged illegal seizure of the sample, it is apparent from a report by the Alabama Department of Forensic Sciences, found in the record, that a urine sample was obtained and sent to that department. The defendant asserts that the seizure of the urine tested by the Department of Forensic Sciences was illegal and tainted the results of the hospital’s urine drug test which the state obtained by subpoena some seven months after he was indicted.
*1288 The absence of any testimony in this record concerning the alleged illegal seizure of the defendant’s urine by the police leaves this court to only speculate as to how the sample was actually acquired. However, assuming, arguendo, that the police sample was obtained through an unlawful seizure, we find that this illegal seizure has no effect on the admissibility of the results of the hospital’s test. “It has been well established ... that evidence is not to be excluded if the connection between the illegal police conduct and the discovery and seizure of the evidence is ‘so attenuated as to dissipate the taint,’ [citations omitted].” Segura v. United States, 468 U.S. 796, 805, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599 (1984).
In the instant case, the hospital records were certainly subject to subpoena and would be admissible after the establishment of a proper predicate. Moreover, it is clear that the police were intensely aware that the defendant was under the influence and that they were intently investigating and building a case against the defendant. In fact, Officer Hendrix informed Dr. Goodloe that she was interested in learning what chemical was in the defendant’s system. There can be no doubt that the defendant’s hospital records would have been subpoenaed regardless of whether the alleged illegal seizure had occurred. We find that the acquisition of the hospital records was completely independent of any prior illegal seizure and that, therefore, there was no taint attached to the state’s obtaining those records.
Having found nothing in this record which warrants the suppression of the results of the urine drug screen test performed by the hospital, we must conclude that the trial court erred in granting the defendant’s motion to suppress those results. Therefore, the judgment is due to be, and it is hereby, reversed, and the cause is remanded.
REVERSED AND REMANDED.
All Judges concur.