LEIGH M. CLARK, Retired Circuit Judge.
In a two-count indictment appellant-defendant was charged with murder in the first degree. The first count alleged that he killed Larry Robinson by driving an automobile over, upon, or against the automobile which Larry Robinson was driving; the second count charged that defendant killed Bartow Browning by operating an automobile in which Browning was a passenger in such a manner as to cause his death.
The court gave the general affirmative charge requested by defendant as to murder in the first degree, murder in the second degree and manslaughter in the first degree, but refused defendant’s requested affirmative charge as to manslaughter in the second degree. The jury found him guilty of manslaughter in the second degree and fixed his punishment at imprisonment in the county jail for one year and a fine of five hundred dollars. He was sentenced accordingly.
The only asserted basis for a reversal is that the evidence was insufficient to support the verdict. The chief contention of appellant is that there was no substantial evidence to support the essential averment of each count of the indictment that defendant was driving or operating an automobile at the time Robinson or Browning was killed.
There were no eyewitnesses to a collision between a Ford station wagon and a Chev *420 rolet automobile at the intersection of Highway 202 and Highway 78 in Calhoun County about 2:00 P.M., October 23, 1976. The first witness to arrive at the scene after the collision testified that the Ford was in the middle of the intersection and the Chevrolet was “off the road” in a gully. Steam was coming from underneath the hood of the Ford. Defendant was in the front seat of the Ford in a leaning position with his body on the passenger’s side and his feet pointed in the direction of the driver’s side. In the back seat of the Ford was Bartow Browning. Both occupants were apparently “semi-unconscious.” Defendant was wiggling but couldn’t get up.
A call for ambulances and law enforcement officers was made soon after the arrival of the first person at the scene of the collision. Several Of them testified. One testified that she examined the contents of the Chevrolet automobile and found a man in the front seat, who did not have a regular pulse and had no blood pressure.
By several witnesses, including experts in their respective fields, it was established that Bartow Browning and Larry Robinson, the person identified by witnesses as the driver of the Chevrolet, died of injuries received at the time of the collision of the two automobiles. There were no lacerations on Browning, but numerous ribs were fractured and one of his lungs was punctured. Defendant had numerous lacerations, and his face and head were bloody at the time he was removed from the Ford and placed on a sti etcher. He also had a fracture of the left leg.
Although defendant did not take the stand on the trial, statements made by him after the collision of the two automobiles indicate that he was not conscious of his driving the Ford at the time of the collision and that either Browning or one Gus Isbell was driving it at the time.
Gus Isbell testified that he had been driving the automobile, that he and defendant and Browning had been on an extended drinking spree, but that he left the automobile a short time before the collision because defendant wished to drive the automobile and he did not want to ride with the defendant driving. At that time, defendant and Browning were the only occupants of the automobile and Browning was asleep in the back seat.
A written statement signed by defendant three days after the collision was offered in evidence without objection. It is as follows:
“Statement of Jimmie Clayton Sr. concerning accident on Sat. 23 Oct. 1976 on or about 2:05 P.M. Me and these two boys had been riding around. Bartow Browning and Gus Isabel and Gus was doing the driving because he wasn’t drinking as much as me and Bartow. Well! We rode down to a store at Choc-colocco and by Jackson Schools (near the Anniston speedway). Then we came back on Choccolocco and Bartow & I had to use the bathroom. We all three got out and Bartow got in the back. We stayed in the Choccolocco area about an hour or until 12:00 Noon and then we went back toward Bynum. We went to Morrison’s Super Value at Bynum. Gus got out at Morrison’s or a store close and got in the car with a friend. He said this friend was going to take him home. Bar-tow wanted to get something to drink and I argued against it. We had had too much already. So I lay down in the front seat and went to sleep. Bartow was in the back seat. I think Bartow must have driven the car and had a wreck. It is my opinion that Bartow Browning was driving the car when it was wrecked. I remember brakes or what sounded like brakes making a noise just at the crash. I remember seeing a red or maroon blur and from there on I’m not sure what happened. I remember someone saying to stay still until we get you out. I remember Gus Isabel getting out of the vehicle before I went to sleep. Whether he got back in or not before we wrecked I don’t know. This statement is made to Trooper Willis and Cpl. Clifton and is true and correct to the best of my knowledge.”
*421 Any claim that Browning or Isbell was driving the automobile at the time of the collision is convincingly refuted by the testimony and by the evidence as a whole. Is-bell’s denial is alone sufficient, if believed, to show that he was not driving. In addition, his testimony is corroborated in several ways. That Browning was not driving is strongly evinced by the fact that after the collision the Ford station wagon was still upright on the highway, Browning was in the back seat without any lacerations and defendant was in the front seat of his own automobile badly lacerated about the face and head. The fact that no one else was in or about the automobile almost immediately after the collision is substantial evidence, if not conclusive proof, that no unknown party was driving the automobile.
Appellant also argues that there is no evidence of his driving an automobile in such a manner as to constitute manslaughter in the second degree of one who is killed as a result of the operation of the automobile.
“Manslaughter in the second degree occurs when neither death nor great bodily harm is intended but when the death is accidentally caused by an unlawful act, or an act strictly lawful in itself, but done in an unlawful manner, and without due caution.” Williams v. State, 83 Ala. 16, 17, 3 So. 616, 617 (1887); Williams v. State, 251 Ala. 397, 399, 39 So.2d 37 (1948); Fulghum v. State, 291 Ala. 71, 75, 277 So.2d 886 (1973). In conformity therewith manslaughter in the second degree has been repeatedly defined as “ ‘the unlawful killing of another human being, without malice and without intent to kill or to inflict the injury resulting in death, but accidentally committed by the accused while he was doing an unlawful act amounting to a misdemeanor, or accidentally committed by the accused while he was doing a lawful act, but in a grossly negligent or improper manner.’ ” Steward v. State, 55 Ala.App. 238, 314 So.2d 313, 316, cert. denied, 294 Ala. 201, 314 So.2d 317 (1975); Touchstone v. State, 42 Ala.App. 141, 155 So.2d 349 (1963); Gill v. State, 37 Ala.App. 210, 65 So.2d 821 (1953).
Driving a motor vehicle upon a public highway while intoxicated constitutes a misdemeanor, punishable at imprisonment for not more than one year, or by a fine of not less than one hundred dollars nor more than one thousand dollars, or by both such fine and imprisonment. Code of Ala. 1940, Recomp.1958, Tit. 36, § 2; Code 1975, § 32-5-170.
A person who while intoxicated drives an automobile along a public highway and runs into or against another causing his death is guilty of manslaughter in the second degree. Oliver v. State, 24 Ala.App. 292, 134 So. 892, cert. denied, 223 Ala. 167, 134 So. 894 (1931).
There was more than ample evidence to show that defendant was intoxicated at the time of the collision. There was much evidence as to the large amount of intoxicating beverage he had consumed within a few hours prior to the collision. There was expert testimony as to the ethyl alcohol content of the blood of defendant, the blood of the victim Robinson and the blood of the victim Browning. As to the blood of appellant and the blood of Browning, it contained 0.29 percent ethyl alcohol. The blood of Robinson contained no observable ethyl alcohol. According to the evidence of a person with 0.29 percent ethyl alcohol in his blood “would definitely be under the influence of intoxicating beverages, would have a staggered gait and perhaps a thick tongue.”
Perhaps the most convincing evidence that defendant was intoxicated at the time of the collision is a written statement he made three days thereafter. Exculpatory as it purportedly is and intentionally was as to appellant’s driving the automobile at the time, it is strikingly inculpatory as to his intoxicated condition and the severe state of intoxication. It is a vivid portrait of an apparently intoxicated person whether it conclusively proves intoxication or not.
Appellant also indicates doubt that the evidence was sufficient to show that his driving the automobile was the cause of the *422 collision. Unfortunately, we do not have as good a view and comprehension of the evidence as the trial judge and jury. A large number of pictures were introduced in evidence. Drawings and maps were used as to places, persons and things. In interrogating witnesses with reference to photographic evidence and the like, there was much “speaking with the hands” or similar sign language, by questions that called for witnesses’ testimony as to whether items inquired about were “over here” or “over there,” or “on this side,” or “on that side,” et cetera. However, from the evidence, we are able to say that the automobile allegedly driven by appellant-defendant was severely damaged in front as if it collided with the other automobile at a considerable rate of speed; that the other automobile was hit on its left side; that the terrain was such that the driver of the Ford had a good opportunity to see the other automobile being striking it; that the many broken ribs of Browning, evidently caused by his hitting the back of the front seat while lying down in the back seat of the Ford, by reason of the momentum of his body, indicate that the Ford was traveling at a high rate of speed. We are unable to say that the driver of the other automobile was free from fault or. that his fault, if any, did not contribute to some extent to the collision.
The contributory negligence, if any, of either of the alleged victims of the homicide, does not constitute a defense to manslaughter. Jones v. State, 21 Ala.App. 234, 109 So. 189 (1926); Broxton v. State, 27 Ala.App. 298, 171 So. 390 (1937); Hubbard v. State, 36 Ala.App. 110, 53 So.2d 631 (1951); Sanford v. State, 38 Ala.App. 332, 83 So.2d 254 (1955).
The court correctly denied defendant’s motion to exclude the evidence and refused defendant’s requested general affirmative charge as to manslaughter in the second degree. We find no error in the record, and the judgment appealed from should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provision of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.