Joseph Veasey was convicted for criminally negligent homicide and sentenced to one year in the county jail. Two issues are raised on this appeal from that conviction.
 I
After Veasey's automobile collided into the rear of a tractor-trailer rig traveling on Highway 90 in Mobile County, Veasey, who was driving, and his passenger, Margaret Oates, were taken to a hospital. Oates was pronounced dead at the emergency room.
A physician ordered a blood test on Veasey as a matter of routine medical procedure for a trauma victim. Veasey was not under arrest and the blood test had not been requested by any law enforcement officer. The test result was admitted into evidence at trial and showed that Veasey had a blood-alcohol level of .246%.
Veasey contends that the blood-alcohol test was inadmissible because he was not under arrest when the blood sample was taken. We disagree.
"[T]he requirement of a lawful arrest in the Alabama `implied consent' statute grants to the motorist in question a procedural right, and . . . the failure to accord that right renders the blood sample illegal for the purpose of its admission as evidence against the motorist who objects to its admission." Ex parte Love, 513 So.2d 24, 30 (Ala. 1987). A motorist must have been arrested specifically for driving under the influence before he can be taken into custody for chemical testing. Hays v. City of Jacksonville, 518 So.2d 892
(Ala.Cr.App. 1987); Sheffield v. State, 522 So.2d 4
(Ala.Cr.App. 1987).
Certain procedural protections are afforded to drivers whom the state requires to submit to chemical tests for intoxication. Those protections include the arrest requirement,Love, supra, Hays, supra; the *Page 322 
procedures established by Alabama's implied consent law (Alabama Chemical Test for Intoxication Act, Alabama Code 1975, §§ 32-5-190 through -194), and the related provisions in §32-5A-194 ("Chemical tests; admissible as evidence") to insure reliability of the test results; and the proper predicate for the admission of the test results at trial. Ex parte Bush,474 So.2d 168 (Ala. 1985). However, "there is no requirement that §32-5-193 [the implied consent law] be used as the exclusive means for admitting intoxication test results." Whetstone v.State, 407 So.2d 854, 856 (Ala.Cr.App. 1981). See also McGoughv. Slaughter, 395 So.2d 972, 977 (Ala. 1981); McDaniel v.State, 506 So.2d 360, 364-65 (Ala.Cr.App. 1986). "[T]he statute is not an exclusive means for admitting blood alcohol test results." Kent v. Singleton, 457 So.2d 356, 359 (Ala. 1984);Aycock v. Martinez, 432 So.2d 1274, 1276-77 (Ala. 1983).
The procedural requirement of an arrest applies only where the motorist is required to take a chemical test. Maffett v.Roberts, 388 So.2d 972, 977 (Ala. 1980) ("Where, . . . the driver actually consents to the test, his arrest is not a condition precedent to its admissibility."). In State v.Strong, 504 So.2d 758 (Fla. 1987), the driver was taken to a hospital following an automobile accident. A noncertified lab technician removed blood for testing. As in the case under review, "[t]he blood was drawn only for medical purposes and not in furtherance of a criminal or accident investigation." The accused argued that section 316.1932 (1)(f)2, Florida Statutes (Supp. 1982), established the procedures which must be followed when blood is taken to render the samples and tests admissible as evidence. That section is comparable to Alabama Code 1975, § 32-5A-194 (a)(2) ("When a person shall submit to a blood test at the direction of a law enforcement officer under the provisions of section 325-192, only a physician or a registered nurse (or other qualified person) may withdraw blood for the purpose of determining the alcoholic content therein.").
The Florida Supreme Court rejected the argument that no blood test could be admitted without fulfilling the technician qualification requirements of the statute. The language of the Florida court in rejecting that argument has equal application here.
 "The sole purpose of section 316.1932 (1)(f)2 is for the protection of drivers whom the government requires to give blood samples under the implied consent law. We find the legislature did not intend this statutory safeguard of the implied consent law to apply to all blood tests offered as evidence.
 "In this case, the state did not request the taking of Strong's blood under the implied consent law, and the state is not claiming, nor may it claim, the presumptive validity or meaning of the blood test in accordance with those statutory provisions." Strong, 504 So.2d at 759-60.
Here, law enforcement officers had not requested that a blood test be performed. Therefore, there was no requirement that Veasey have been arrested before a sample of his blood was seized. We hold that, where blood is seized only for medical purposes and not in furtherance of a criminal or accident investigation, the arrest requirement of Alabama's Implied Consent Law is not applicable.
Here, Cindy Windham testified that she was a registered medical technologist. She drew some blood from Veasey and ran a blood-alcohol test using a Dupont Automated Chemistry Analyzer machine. She testified that that machine is "a scientifically accepted method for determining blood alcohol" and that the machine produced accurate results. Considering her testimony and the particular objection made in this case, we find no error in the admission of the results of the blood-alcohol test.
 II
Technologist Windham testified that the machine she used measures "milligrams of alcohol per deciliter." The defendant objected to the admission of the test result because §32-5A-194 (a)(5) provides: "Percent by weight of alcohol in the blood shall be based upon grams of alcohol per 100 cubic centimeters of blood."
Windham testified that the result of the blood test was "two forty-six milligrams *Page 323 
per deciliter. * * * To convert it to legal terms, it's the same as .246 grams per cubic centimeter." On voir dire, Windham testified that ".10 is the same as one hundred milligrams per deciliter."
Confusion is created because Windham never expressly explained her findings in grams per 100 cubic centimeters, even though it is clear that that was the import of her testimony.
A "court takes judicial knowledge of simple mathematical calculations," Callahan v. Booth, 275 Ala. 275, 278,154 So.2d 32, 36 (1963). "The courts also take judicial notice of the rules of arithmetic, and of weights and measures other than those which are odd or unusual." 29 Am.Jur.2d Evidence at § 112 (1967). This Court can take judicial notice of the fact that, since 100 cubic centimeters is equivalent to one deciliter, 246 milligrams per deciliter is equivalent to .246 grams per 100 cubic centimeters. Windham's finding that the defendant's blood-alcohol level was .246 is correct.
The trial judge charged the jury "that if there was at the time of the collision .01 percent or more by weight of alcohol in the defendant's blood, it shall be presumed that he was under the influence of alcohol." There was no objection to the court's oral charge.
The defendant argues that the evidence of the blood test result was inaccurate, "was simply wrong and left the jury with no realistic way to assess the test results in relation to the legal presumption they were instructed on." Appellant's brief at 8.
Our review of Ms. Windham's testimony convinces us that the jury was not misled or confused to the prejudice of the defendant.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.