On July 1, 1986, a highly intoxicated Johnny C. Allen was driving his automobile at a high rate of speed when he crashed into the rear of the motorcycle driven by Carl Howard. Allen was convicted for the manslaughter of Mr. Howard and sentenced to life imprisonment as a habitual offender, fined $5,000, ordered to make restitution in the amount of $9,000, and further ordered to pay $1,000 to the victims' compensation fund. Three issues are raised on this appeal from that conviction.
 I
The results of a test of a blood sample taken from the defendant at the hospital emergency room "for diagnostic purpose only" and as a part of routine hospital procedure was properly admitted into evidence even though the defendant had not been placed under arrest. "[W]here blood is seized only for medical purposes and not in furtherance of a criminal or accident investigation, the arrest requirement of Alabama's Implied Consent Law is not applicable." Veasey v. State,531 So.2d 320 (Ala.Cr.App. 1988).
Here, the record does contain a request for a blood sample signed by a Muscle Shoals police officer. However, other than the officer's signature, badge number, and police department, the form is blank. More significantly, the evidence is undisputed that the blood test was ordered by the treating physician for diagnostic purposes and not because of, or in conjunction with, the officer's request. Under these circumstances, the result of the blood test showing that the defendant had a blood-alcohol level of .393 was properly admitted into evidence.
 II
The trial judge denied the defendant's pretrial motion for psychiatric examination, and, after an evidentiary hearing, denied the defendant's "motion to reconsider the application for mental evaluation."
The evidence presented at the hearing on the motion to reconsider shows that the defendant was treated for alcohol abuse at two treatment facilities in 1983. A "psychiatric evaluation" report shows that "much of [the defendant's] trouble is characterological in nature, although, the diagnosis is one in which he does have some *Page 1126 
signs of a chronic brain syndrome[1] following a trauma and he also has preexisting alcoholism." An "assessment/screening" report states: "The client shows no signs of psychotic behavior or thinking." That report continues: "The client is an individual who has not adequately dealt with life's responsibilities. He seems to have a low frustration tolerance level and low manifest anxiety level. The client appears to have difficulty learning from past punishment."
"A defendant does not have a right to a mental examination whenever he requests one. Rather, this is a matter within the discretion of the trial judge, with the defendant bearing the burden on a motion for a competency investigation of persuading the court that a reasonable and bona fide doubt exists as to the defendant's mental competency." Robinson v.State, 428 So.2d 167, 170 (Ala.Cr.App. 1982). See also Pace v.State, 284 Ala. 585, 587-88, 226 So.2d 645 (1969).
"Intoxication in itself does not constitute mental disease or defect. . . ." Alabama Code 1975, § 13A-3-2(d). "Although excessive intoxication may produce insanity, . . . 'legal insanity does not embrace every kind of mental disease and disorder that renders a person not responsible for his acts.' "Lister v. State, 437 So.2d 622, 624 (Ala.Cr.App. 1983). Here, the defendant produced no evidence that his long-continued alcohol indulgence had resulted in a mental disease or defect which caused him to lack "the substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." § 13A-3-1(a). Additionally, the defendant failed to present evidence generating a reasonable and bona fide doubt of his mental competency to stand trial.
 III
The defendant was indicted for "reckless" murder under §13A-6-2(a)(2). To this indictment, the defendant pleaded that "he is not guilty by reason of insanity or in the alternative was unable to form an intent due to alcohol and/or drug addiction." The trial judge instructed the jury on the elements of this offense and gave the statutory definition of "recklessly" contained in § 13A-2-2(3). The last sentence of that definition states: "A person who creates a risk but is unaware thereof solely by reason of voluntary intoxication, . . . acts recklessly with respect thereto."
The trial judge did not charge the jury on the defense of mental disease or defect or the defense of intoxication. Defense counsel submitted no written requested charge, but did make two oral objections to the oral charge of the trial court: (1) "the charge of not guilty by reason of mental disease or defect was not provided," and (2) the "failure to charge on intent."
The trial judge properly refused to charge on mental disease or defect because the only evidence presented at trial was that the defendant was suffering from voluntary intoxication. " 'The trial court should not submit the issue of insanity to the jury unless there is evidence to sustain the plea.'Darrington v. State, 389 So.2d 189, 190 (Ala.Cr.App. 1980)."Young v. State, 428 So.2d 155, 160 (Ala.Cr.App. 1982).
The only witness to testify for the defense was David Michael Cutler, the physician who treated the defendant in the emergency room after the collision. Dr. Cutler testified that, at that time, the defendant was disoriented from alcohol intoxication. He stated that with a blood-alcohol level of .393 it was "certainly possible" that an individual of the defendant's size could be very close to comatose or maybe even death; that the defendant was not comatose; and that "[i]t's very difficult to correlate *Page 1127 
relate the extent of a high blood alcohol with the extent of the impairment on them." Other than the fact that the defendant was disoriented, Dr. Cutler did not testify that defendant was intoxicated to the extent that he was incapable of forming or entertaining any intent at all. See Lovett v.State, 491 So.2d 1034, 1039 (Ala.Cr.App.), cert. denied, Exparte Lovett, 491 So.2d 1039 (Ala. 1986).
At trial, there was no evidence that the defendant had a history of alcohol abuse. There was no expert testimony that a person with a blood-alcohol level as high as the defendant's would be incapable of "realiz[ing] the likelihood of a collision; and the consequent taking of human life."Langford v. State, 354 So.2d 313, 315 (Ala. 1978).
 " 'In order to authorize a conviction for murder . . . for a homicide caused by the driving of an automobile, the evidence must be sufficient to warrant a finding by the jury that the accused either intentionally caused the collision or that he
 " ' "was conscious of his acts, conscious of the impending danger surrounding him, and of the probable results of his acts, and then with a reckless indifference to the probable consequences of his acts, brought about the collision and death of the deceased." Hyde, [v. State] 230 Ala. [243] at 244, 160 So. [237] at 238.' " Jolly v. State, 395 So.2d 1135, 1139 (Ala.Cr.App. 1981).
"[W]hile the American Medical Association has considered alcoholism a disease since 1956, its legal status has never been clear." A. Neal, Is Alcoholism A Disease? ABA Journal 58, 59 (February 1, 1988); Traynor v. Turnage, 485 U.S. 535,108 S.Ct. 1372, 1383, 99 L.Ed.2d 618 (1988) ("This litigation does not require the Court to decide whether alcoholism is a disease whose course its victims cannot control. It is not our role to resolve this medical issue on which the authorities remain sharply divided."); Granville House, Inc. v. Department ofHealth, Education and Welfare, 813 F.2d 881, 884 (8th Cir. 1987) ("Here, the government's characterization of alcoholism as a mental disease, without thoroughly researching the issue, was unreasonable.").
Any error in the trial judge's failure to charge on "intent" has not been preserved for review because defense counsel stated no grounds for his objection. Ex parte Maxwell,439 So.2d 715, 717 (Ala. 1983). On appeal, argument is advanced to the effect that the jury should have been charged on the legal principles involved when one is intoxicated to the extent that one cannot form the requisite intent to commit the charged offense. However, this was not the ground of objection stated at trial. The objection stated in the record, "the failure to charge on intent," is ambiguous and open to various interpretations.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] The term "chronic brain syndrome" is "used to describe a number of organic brain disorders resulting from impairment of brain tissue. The impairment is relatively permanent and usually irreversible as distinguished from acute brain disorders which are often temporary and reversible. The original pathological process may subside or respond to treatment but the brain tissue destruction cannot be corrected." J. Schmidt, Attorneys' Dictionary of Medicine andWord Finder, C-165 (1985). At the hearing on the motion to reconsider the defendant's medical records were admitted into evidence. However, no explanation or interpretation of those records or the terms employed therein was provided.