This petition for the writ of certiorari follows an appeal by the State from a ruling by the Circuit Court of Mobile County granting Radford's motion to suppress the results of a urine drug screen test performed by Springhill Memorial Hospital.
On March 25, 1986, Richard Scott Radford allegedly drove into a crowd, striking two pedestrians and causing their deaths. He was indicted and charged with driving his automobile into a group of pedestrians while under the influence of benzoylecgonine, a metabolite of cocaine.
Radford was taken after the accident to Springhill Memorial Hospital, where he was treated in the emergency room by a Dr. Goodloe. Dr. Goodloe observed Radford acting as if his mental state had been altered by the influence of a chemical. Mobile police officer Hendrix arrived at the hospital some time after Radford was admitted. Dr. Goodloe testified at the suppression hearing that while Officer Hendrix had made it clear that she thought Radford was under the influence of drugs, Goodloe did not perform any tests at the direction of Officer Hendrix.
Dr. Goodloe testified that he ordered a drug screen for Radford in order to rule out other possible causes for his behavior. The doctor testified that a urine sample was also ordered to make sure that there was no kidney injury. The hospital's test revealed that Radford was under the influence of a metabolite of cocaine at the time of the accident.
The defendant filed a motion to suppress the use as evidence of any urine drug screen tests. In addition to the hospital test, a separate urine drug screen test had also been performed by the Department of Forensic Sciences. The record shows, however, that the State indicated to the trial court at the suppression hearing that it did not intend to use the Department of Forensics test as evidence at trial. The Department of Forensics test also revealed that Radford was under the influence of a metabolite of cocaine. There is insufficient testimony in the record to show how or exactly when this urine sample was taken for the Department of Forensic Sciences test. The evidence does indicate that possibly both the hospital test and the Department of Forensic Sciences test were performed using portions of the same sample. *Page 1290 
Radford's motion to suppress raised objections to the use of both tests as evidence on the grounds that Officer Hendrix had obtained a sample of Radford's urine without any authorization or warrant and in violation of Alabama's "implied consent statute", and had submitted this sample to the Alabama Department of Forensic Sciences. The results of the drug screen performed by the Department of Forensic Sciences were used as evidence before the grand jury. The results of the test performed through the hospital were not used as evidence before the grand jury, but were later subpoenaed by the district attorney.
A hearing was held on this motion along with a motion in limine on the same matter. The circuit court granted Radford's motion to suppress with respect to both tests. Although the basis of the trial court's ruling is not clear from the record, it is clear that Radford argued that both tests were taken at the behest of the police and that the operation of Alabama's implied consent statute, Code of Alabama 1975, § 32-5-192, as well as general Fourth Amendment protections, barred the use of the tests as evidence. However, we again note that the statements made on behalf of the State at the suppression hearing clearly indicate that the Department of Forensic Sciences test was not going to be used as evidence at Radford's trial. Thus, the motion to suppress granted by the trial court applied only to the test performed by the hospital. The State appealed. The Court of Criminal Appeals reversed, holding that the implied consent statute pertained only to alcohol and nothing else, and was therefore inapplicable to a drug screen performed for different substances. The Court of Criminal Appeals also held that because the hospital test was performed in the normal course of the treatment process, and not under the direction of the police, the results of the test should not have been suppressed by the trial court.
 ISSUES
I. Whether Alabama's implied consent statute applies to controlled substances, as well as to alcohol.
II. Whether the trial court erred in finding that the urinalysis test that was performed by the hospital in this case was not conducted in the normal course of medical treatment and is, therefore, inadmissible.
Due to the relationship of these issues to each other and their treatment by the Court of Criminal Appeals, these issues will be considered in reverse order.
 ADMISSIBILITY OF THE HOSPITAL'S DRUG TEST
The record in this case reveals that on March 25, 1986, Dr. Goodloe was working as the staff physician in the emergency department of Springhill Memorial Hospital in Mobile. Around 9:10 a.m., Radford was admitted to the hospital. Dr. Goodloe observed that Radford had multiple abrasions, that he had lacerations on his leg, and that he was covered with blood and was in a great deal of pain. Dr. Goodloe also testified at the suppression hearing that Radford was acting as if he was in an altered mental state and did not know what was happening. Dr. Goodloe's notes reveal that Radford was oriented in the emergency room only as to time, place, and person, but not as to the situation. In other words, according to Dr. Goodloe, Radford "didn't really have a good grasp of what's going on."
The doctor said he remembered seeing police officer Hendrix, but that he did not remember having a specific conversation with the officer. He said he remembered a general discussion regarding the scene of the accident and remembered that Radford was "probably on something." Officer Hendrix made it clear that she thought Radford was under the influence of some chemical and that she would like very much for Dr. Goodloe to examine Radford further in that regard. However, Dr. Goodloe stated very specifically at the hearing, "I didn't do anything to assist Officer Hendrix."
Dr. Goodloe discussed Radford's condition with Dr. Zarzour, the orthopedist on call for unassigned patients. After this discussion, at which time one of the doctors suggested a drug screen, a drug screen was ordered at approximately 2:00 p.m. *Page 1291 
Dr. Goodloe testified that "[a]t that point, we were far more interested in making sure that there was no kidney injury, and I expect that that urine was sent to the lab to look for blood."
The initial question before us is whether the evidence supported the trial court's determination that the urine drug screen was ordered by Dr. Goodloe as a result of police action, i.e., at Officer Hendrix's request. From a review of the record, as set forth above, we agree with the Court of Criminal Appeals that the evidence indicates that the urine drug screen was ordered purely for routine medical treatment, and not at the instance of the police or of any other state actor.
The Court of Criminal Appeals has previously applied the rule we today adopt:
 "The results of a test of a blood sample taken from the defendant at the hospital emergency room 'for diagnostic purpose only' and as a part of routine hospital procedure was properly admitted into evidence even though the defendant had not been placed under arrest. '[W]here blood is seized only for medical purposes and not in furtherance of a criminal or accident investigation, the arrest requirement of Alabama's Implied Consent Law is not applicable.' "
Allen v. State, 539 So.2d 1124, 1125 (Ala.Crim.App. 1988), quoting Veasey v. State, 531 So.2d 320 (Ala.Crim.App. 1988). The basis of these decisions is simply that in such a situation there has been no search or seizure by the state, and, thus, the state has not violated the defendant's rights.
Because we find that the urine drug screen performed by the hospital was ordered in the normal course of the treatment process, we affirm the decision by the Court of Criminal Appeals in this regard. The trial court should not have suppressed the evidence obtained as a result of the hospital's routine medical treatment.
 IMPLIED CONSENT STATUTE
In light of our holding that there is no state action involved in this case, and the fact that Alabama's implied consent statute governs only situations involving state action, we need not address the applicability of that statute to situations involving persons under the influence of controlled substances. We do not address the statement made by the Court of Criminal Appeals in its opinion that "the plain language of this statute refers to alcohol only."
 GRAND JURY EVIDENCE
Although our discussion to this point is dispositive of the issues before us, it is appropriate that we address the defendant's argument on the validity of the indictment, because that indictment may serve as the basis for trial. It is not clear from the record, however, whether the defendant has preserved this issue for appeal. Assuming arguendo that the issue was properly preserved, it is discussed below.
The defendant claims that the Department of Forensic Sciences test was performed illegally, and, therefore, that its use by the grand jury to support the indictment is in error. We disagree. In regard to federal constitutional questions, Alabama follows the decisions of the United States Supreme Court. In Aaron v. State, 271 Ala. 70, 77, 122 So.2d 360
(1960), we followed Costello v. United States, 350 U.S. 359,76 S.Ct. 406, 100 L.Ed. 397 (1956), which held that the Fifth Amendment does not require that the evidence put before the grand jury be completely without taint. As we had stated earlier, "If legal evidence is given [sufficient to support an indictment], . . . an indictment is not subject to be quashed because there was illegal evidence also given." Fikes v. State,263 Ala. 89, 81 So.2d 303, 310 (1955). See also Holt v. UnitedStates, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910).
On the basis of the foregoing, we affirm the Court of Criminal Appeals' judgment, which was based on its holding that the trial court erred in granting the defendant's motion to suppress the hospital drug screen.
AFFIRMED.
MADDOX, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
JONES and KENNEDY, JJ., dissent, with opinion by KENNEDY, J. *Page 1292