At approximately 12:30 a.m. on August 28, 1988, a pick-up truck driven by the appellant, Joseph Patrick Russo, collided with an automobile occupied by Owen and Sarah McLean. Both of the McLeans died as a result of this collision. The appellant was subsequently charged in a four-count indictment with two counts of reckless manslaughter (one related to the death of Owen McLean, the other to the death of Sarah McLean) and with two counts of vehicular homicide (one related to the death of Owen McLean, the other to the death of Sarah McLean). At trial, the case was submitted to the jury on the manslaughter counts, along with instructions on the included offenses of vehicular homicide and criminally negligent homicide. See Part II below. The jury found the appellant guilty of two counts of criminally negligent homicide. The trial court sentenced the appellant to imprisonment in the county jail for one year on each conviction, with the sentences to run concurrently. The appellant was also fined $1,000 and was ordered to pay $250 to the Crime Victims' Compensation Fund and court costs on each conviction. Two issues are raised in this appeal from those convictions.
 I
There was no error in the admission of a blood alcohol test showing that the appellant's blood alcohol level was .14 percent.
Blood tests performed pursuant to the implied consent law, Ala. Code 1975, § 32-5-192, are clearly admissible against a defendant alleged to have committed a criminal act while driving under the influence, see § 32-5A-194(a). However, the implied consent law and § 32-5A-194 are not "the exclusive means for admitting intoxication test results." Whetstone v.State, 407 So.2d 854, 856 (Ala.Cr.App. 1981). In Veasey v.State, 531 So.2d 320, 322 (Ala.Cr.App. 1988), cert. denied,531 So.2d 323 (Ala. 1988), we held that "where the blood is seized only for medical purposes and not in furtherance of a criminal or accident investigation," the results of a blood alcohol test are admissible under general evidentiary principles. The Alabama Supreme Court affirmed this holding in Ex parteRadford, 557 So.2d 1288, 1291 (Ala. 1990). See also Davis v.State, 593 So.2d 145, 149 (Ala.Cr.App. 1991); Beadnell v.State, 574 So.2d 890, 892 (Ala.Cr.App. 1990); Allen v. State,539 So.2d 1124, 1125 (Ala.Cr.App. 1988).
The implied consent law was not utilized in this case. After the collision, which occurred on Highway 182 in Orange Beach, Alabama, the appellant was transported to Sacred Heart Hospital in Pensacola, Florida, arriving there between 2:00 and 2:30 a.m. The appellant was initially treated by Dr. Michael M. Weeks, an emergency room physician, and he remained in the hospital as a patient for approximately one week. At the hearing on the appellant's motion to suppress, Dr. Weeks testified that when he first saw the appellant on the morning of August 28, 1988, the appellant "was immobilized on a back board and a cervical immobilization device." R. 6-7. Dr. Weeks stated that he ordered that an alcohol blood level test be performed, along with several other tests. When asked why he ordered the blood alcohol test, Dr. Weeks responded:
 "Part of the primary trauma panel [of laboratory tests]. He seemed to have some odor of alcohol to the breath. He was not grossly intoxicated. I was not real suspicious of an internal head injury. Any time there's someone that's involved in a significant trauma, you'd like to know a baseline of what their alcohol level is should their mental status change."
R. 7-8.[1] Dr. Weeks stated unequivocally that he did not order the blood alcohol test *Page 1208 
at the request of any law enforcement officer. On cross-examination, Dr. Weeks acknowledged that the blood alcohol test "was not performed in order to determine medical treatment" and that he neither took any further action nor declined to take any further action based on the results of this test. R. 13.
The appellant argued at the motion to suppress thatVeasey permitted the introduction of blood tests "where blood was seized only for medical purposes," R. 31, and that this particular blood test was inadmissible because
 "there is no testimony in this cause that the seizure was for medical purposes. The fact that it may have been done as a part of routine medical procedure is not the question necessarily; but whether or not there was a medical purpose or a purpose related to the treatment of the patient for which the seizure occurred." R. 31.
The trial court denied the motion to suppress, stating:
 "[T]here's no testimony in this case that Dr. Weeks even had any discussion with any law enforcement types, be they officers, be they coroners, be they anybody, prior to ordering this test. I think that the defense's distinction as to whether or not the test was medically necessary is too fine a distinction. I believe Dr. Weeks has testified that he needed that information or desired that information for potential use. The fact that he had no use for it or made no use for it and that anyone else so far as we know at this point made any use for it is irrelevant. It is the purpose and the circumstances. In this case, it appears the purpose was clearly to provide routine medical information which might be — and I use the term 'might be useful' to the medical personnel in treating a patient. I don't find the distinction in Veasey or the following cases to mean and to say that that then must have been used. I think to do so would be too narrow a reading." R. 33-34.
The trial court was correct is its assessment that the appellant's argument was "too narrow a reading" of Veasey.Veasey, Radford, and their progeny make it clear that it is thelack of state action — not whether the blood tests were actually used in treating the defendant — that is controlling in this situation: "The basis of these decisions is simply that in such a situation there has been no search or seizure by the state, and, thus, the state has not violated the defendant's rights." Ex parte Radford, 557 So.2d at 1291. In view of Dr. Weeks' testimony, it is clear that the results of the blood test were admissible under the Veasey and Radford line of cases.
The appellant argues on appeal that the results of the blood test were inadmissible because none of the hospital personnel involved — the doctor who ordered the test, the phlebotomist who took the blood sample from the appellant, and the medical technologist who tested the sample — were shown to have "a valid permit issued by the department of forensic sciences for this purpose" as required by § 32-5A-194(a)(1). Section32-5A-194(a) clearly relates to tests performed under the implied consent law, § 32-5-192. As noted above, the State was not travelling under the implied consent law, but, instead, sought to introduce the results of the blood test under general evidentiary principles. Those principles do not require that the persons involved in the testing process have a permit issued by the Department of Forensic Sciences. See generallyKent v. Singleton, 457 So.2d 356, 359 (Ala. 1984); Nelson v.State, 551 So.2d 1152, 1154 (Ala.Cr.App. 1989).
 II
The appellant contends that the trial court erred in refusing to give his requested charges numbered 1 through 23 and his additional requested charges designated A, B, and C.
At the close of the State's case-in-chief, the appellant made a motion for judgment *Page 1209 
of acquittal and a motion to require the State to elect between the two offenses charged in the indictment. After discussion by the parties regarding which offenses the appellant could be convicted of, given the indictment and the evidence adduced,[2] the court denied the motion for judgment of acquittal, but ruled that the "State w[ould] be required to elect before the case goes to the jury." R. 288.
At the close of all the evidence, the appellant renewed his motion for judgment of acquittal, arguing, in essence, that the victims were contributorily negligent.[3] He also argued that, with regard to the vehicular homicide charges, there had been no showing that his conduct was "the proximate cause; that is, the sole cause of the death[s] of [the McLeans]." R. 362-63. The trial court again denied the motion for judgment of acquittal. R. 369.
The appellant also renewed his motion to require the State to elect. After much discussion by the parties and the trial court, it was agreed that the State would nolle pros the vehicular homicide counts of the indictment and that the case would be submitted to the jury on the manslaughter counts. It was also agreed that the trial court would instruct the jury on the included offenses of vehicular homicide and criminally negligent homicide.[4]
Having determined the offenses on which the jury would be instructed, the trial court "move[d] to the Defendant's requested charges." R. 389. The trial court then went over the requested charges numbered 1 through 23 individually. The majority of these charges were refused as "separate charges," with the trial judge indicating that he would give them in substance in his oral charge, although a few requested charges were simply refused. Requested charge 10, relating to driving under the influence, was refused as "not a correct statement of the law in this case." R. 392. Requested charge 15, relating to driving under the influence, was refused as "not correct under each element of the offenses which would be submitted for [the jury's] consideration." R. 393. Requested charge 20 (and apparently requested charge 21, which the trial court characterized as "remarkably similar") was refused as "confusing." R. 396.
Defense counsel modified a few of the requested charges during this process and engaged in limited discussion with the trial court with regard to two of the requested charges (requested charges 18 and 23). However, defense counsel did not, at any time, object to the trial court's refusal ofany of the requested charges. *Page 1210 
A lunch recess was taken during closing arguments. During this recess, the trial court stated on the record that there had been a previous discussion of the application of the presumptions contained in Ala. Code 1975, § 32-5A-194(b),[5] and that the appellant had submitted requested charges A, B, and C with regard to these presumptions. The court stated that it was refusing the additional requested charges, but that they would be covered in substance in his oral charge. Defense counsel did not object to the refusal of the requested charges, but did argue that the presumptions contained in § 32-5A-194(b) were inapplicable in view of the fact that the State was not proceeding under the implied consent statute. R. 405. See Part I above.
When the trial court concluded its oral instructions to the jury, defense counsel made the following objection:
 "Defendant excepts to the Court's refusal to give our requested charges numbered 1 through 23 on the basis that we discussed in the charge conference. We also except to the Court's failure to charge the jury as you indicated you would on the doctrine of contributory negligence[6] as it relates to proximate cause. We except to the Court's definition of proximate cause in that the definition used reduces the State's burden of proof in the case. Under the definition used by the Court in the general charge, the jury could find Mr. Russo guilty of manslaughter if they found that his conduct was a cause which in the natural and probable sequence of events produced the McLean's deaths. That's not the law. The law requires that it be the primary moving cause without which those deaths would not have occurred. The Court's instruction reduced the State's burden to the extent that it may — that the jury may act now on less than proof beyond a reasonable doubt of the element of proximate cause."
R. 431-32 (footnote added). The trial court responded that "the definition of proximate cause, the definition used is that provided by the pattern jury instructions for criminal cases and was read verbatim therefrom." R. 432-33. He also stated:
 "As to the failure to give the contributory negligence, in reconsideration, even though I did, in fact, indicate to counsel I would so do, and reassessing the criminal charge of manslaughter under the facts of this case — I'm sorry; vehicular homicide — I found that there was no provision for the giving of the contributory negligence charge; and, in fact, the proximate cause charge is the only one appended to vehicular homicide." R. 433.
Defense counsel also objected to the trial court's refusal to give requested charges A, B, and C. He reiterated that the presumptions of § 32-5A-194(b) were inapplicable, then stated that requested charges A, B, and C "deal[t] with the presumptions set forth in the statute [§ 32-5A-194(b)] from the Defendant's point of view"; that the charges were "correct statements of law"; and that the trial court "didn't charge in any respect the matters contained in those charges." R. 434. In response to the last objection raised by defense *Page 1211 
counsel, the trial court gave the jury supplemental instructions.
In this appeal, the appellant argues that the trial court's oral instructions were deficient in several respects. However, most of the alleged deficiencies were not raised at trial and, consequently, are not properly before this Court for review. "No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and thegrounds of his objection." Rule 14, A.R.Crim.P.Temp. (now Rule 21.2, A.R.Crim.P.) (emphasis added). Because the appellant stated no objections or grounds therefor at the charge conference, his later objection to the trial court's failure to give his "requested charges numbered 1 through 23 on the basis that we discussed in the charge conference" was insufficient to preserve the issue for appeal. Cf. Johnson v. State,552 So.2d 883, 886 (Ala.Cr.App. 1989) ("[w]e except" not sufficient to preserve issue of error in oral charge). Thus, the only issues preserved for our review are those specifically stated at trial: the failure to charge on contributory negligence, the alleged deficiency in the instruction on proximate cause, and the refusal to give requested charges A, B, and C.[7]
The request for an instruction on contributory negligence was properly refused. "It is no defense or excuse in a prosecution for crime that the victim was contributorily negligent."Fields v. State, 494 So.2d 477, 484 (Ala.Cr.App. 1986). AccordClayton v. State, 359 So.2d 419, 422 (Ala.Cr.App. 1978). Fields
involved a conviction for vehicular homicide and Clayton
involved a conviction for manslaughter arising out of an automobile collision. Similarly, the contributory negligence of a victim is not a defense to a prosecution for criminally negligent homicide. Brown v. State, 773 S.W.2d 65, 67
(Tex.App. 1989) (construing Tex.Penal Code Ann. § 19.07 (West 1989) (defining criminally negligent homicide) and § 6.03(d) (West 1974) (defining criminal negligence), which are virtually identical to Ala. Code 1975, §§ 13A-6-4(a) and 13A-2-2(4)).
As the trial court stated, the instruction on proximate cause was taken from the "pattern jury instructions for criminal cases." Ala. Pattern Jury Instr. Crim. 6-18 (1989 rev.). Moreover, the instruction on proximate cause related only to the instruction on vehicular homicide. Because the appellant was not convicted of that offense, any error in that instruction was harmless. See Deutcsh v. State, 610 So.2d 1212
(Ala.Cr.App. 1992).
Requested instructions A and B, stating that the presumption under § 32-5A-194(b)(3) is rebuttable, were fairly and substantially covered in the court's oral charge and thus were correctly refused. See Rule 14, A.R.Cr.P.Temp. (now Rule 21.1, A.R.Crim.P.); Young v. State, 283 Ala. 676, 679, 220 So.2d 843,845 (1969); Acres v. State, 548 So.2d 459, 468 (Ala. 1987). Requested charge C reads as follows:
 "The court charges the jury that even if Mr. Russo's blood alcohol content was .10 or higher, if you are not satisfied beyond a reasonable doubt that his ability to drive his automobile was impaired, then you must find him not guilty." CR. 99.
This requested charge confused the burden of proof under §32-5A-191(a)(1) and (a)(2), see Ex parte Buckner,549 So.2d 451, 453 (Ala. 1989); Cains v. State, 555 So.2d 290, 298
(Ala.Cr.App. 1989), was an incorrect statement of law, and was properly refused for that reason, see Yessick v. State,274 Ala. 488, 490, 149 So.2d 818, 820 (1962); Sasser v. State,494 So.2d 857, 860 (Ala.Cr.App. 1986); Craig v. State,410 So.2d 449, 454 (Ala.Cr.App. 1981). *Page 1212 
For the reasons stated above, the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] Similarly, at trial, when asked why he ordered the blood alcohol test, Dr. Weeks stated: "When a patient presents in a trauma situation, their mental status may change, get better, get worse. And at the time you are taking care of them, having a baseline of blood alcohol gives you some indication of what it should or shouldn't be." R. 103-04.
[2] The State presented evidence from which the jury could infer that the appellant was under the influence of alcohol, that he was speeding, or both, at the time of the collision. There was also evidence that the collision occurred in an area where construction work was being done on the highway, that construction vehicles were parked along the highway in this area, and that there was a posted suggested speed limit of 35 m.p.h., although the legal speed limit was 55 m.p.h.
[3] The appellant contended that the victims were attempting to cross the highway and pulled out or turned in front of him.
[4] During this discussion, the State pointed out that criminally negligent homicide could be either a misdemeanor or a felony. The trial court originally stated, without objection by the appellant, that it would instruct the jury on both the misdemeanor and felony forms of this offense. Ultimately, however, the court decided to instruct only on the misdemeanor form. This decision was correct for the following reason, which was not recognized by anyone at trial: At the time of the instant offense, August 28, 1988, Ala. Code 1975, § 13A-6-4(c) provided:
"Criminally negligent homicide is a Class A misdemeanor."
Effective September 30, 1988, § 13A-6-4 was amended so that subsection (c) now provides:
 "Criminally negligent homicide is a Class A misdemeanor except in cases in which said criminally negligent homicide is caused by the driver of a motor vehicle who is driving in violation of the provisions of § 32-5A-191 [driving under the influence]; in such cases criminally negligent homicide is a Class C felony."
Act No. 88-916, 1988 Ala. Acts 510 (codified at § 13A-6-4(c) (Supp. 1991). The old version of § 13A-6-4(c) was clearly applicable to the appellant's case. See Bracewell v. State,401 So.2d 123, 124 (Ala. 1979) ("[a]bsent a clear expression in the Statute to the contrary, we think the law applicable at the time of the offense was intended to govern the offense, the offender, and all proceedings incident thereto").
[5] Section 32-5A-194(b) provides:
 "Upon the trial of any civil, criminal, or quasi-criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of alcohol, the amount of alcohol in the person's blood at the time alleged as shown by chemical analysis of the person's blood, urine, breath, or other bodily substance shall give rise to the following presumptions:
". . . .
 "(2) If there were at the time in excess of 0.05 percent but less than 0.10 percent by weight of alcohol in the person's blood, such fact shall not give rise to any presumption that the person was or was not under the influence of alcohol, but such fact may be considered with other competent evidence in determining whether the person was under the influence of alcohol.
 "(3) If there were at that time 0.10 percent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of alcohol."
[6] Although the trial court refused the appellant's requested charge relating to contributory negligence, it did agree at the charge conference to instruct the jury on the concept of contributory negligence in connection with the vehicular homicide instruction. R. 397-98.
[7] Although the appellant argued at trial that the presumptions contained in § 32-5A-194(b) were inapplicable under the facts of this case, that issue is not argued on appeal and will not be addressed in this opinion. See Rule 45B, A.R.App.P.