The appellant, Willie C. McCray, was indicted for the capital offense of murder during the course of a robbery in the first degree, see 13A-5-40(a)(2), Ala. Code 1975, and for theft of property in the first degree, a violation of 13A-8-3, Ala. Code 1975. The jury returned verdicts finding McCray guilty of felony murder, as a lesser included offense of capital murder, and of theft in the first degree, as charged in the indictment. McCray was sentenced, as a habitual felony offender, to life imprisonment without parole for the felony murder conviction and to life imprisonment for the theft conviction.
The state's evidence tended to show the following. On the evening of August 6, 1993, McCray and an accomplice stole an automobile belonging to Frank Edwards and drove to the Country Market grocery store in Dothan. As his accomplice stood by the exit, McCray, armed with a pistol, entered the store and demanded that he be given the money from the store safe. During the robbery, Michael Scott, a customer who had been waiting in the check-out line, struck McCray in the face, whereupon McCray shot Scott in the face. McCray and his accomplice fled the scene, firing their guns as they left. Scott was transported to a hospital; he died four days later from the gunshot wound to his face.
 I.
McCray contends that the state engaged in purposeful racial discrimination, in violation of the principles of Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed 2d 69 (1986), by using its peremptory challenges to remove black prospective jurors from the venire. In this regard, McCray argues that the prosecutor, when responding to McCray's Batson motion in the trial court, made statements indicating that the state had struck blacks from the venire to avoid an all-black jury and to ensure that whites would be represented on the jury. Such statements, McCray says, constituted a blatant admission of racially discriminatory intent by the state.
The removal of even one prospective juror for a racially discriminatory reason is a violation of the equal protection rights of both the excluded juror and the party challenging the peremptory strike. Ex parte Jackson, 640 So.2d 1050 (Ala. 1993); Ex parteBird, 594 So.2d 676, 683 (Ala. 1991). See Batson, 476 U.S. at 89,106 S.Ct. at 1719.
McCray is black; the murder victim was white. The record reflects that the state used 7 of its 19 peremptory strikes to remove blacks from the venire.[1] There were 10 blacks on the jury; 9 were actually seated on the jury and 1 was an alternate juror. After the jury was struck, McCray's counsel made a Batson motion, arguing that the state had used its peremptory strikes in a racially discriminatory manner. Without finding that McCray had established a prima facie case of purposeful discrimination under Batson, the trial court asked to hear from the state, and the following exchange ensued:
 "[Prosecutor]: Judge, [McCray's counsel] stated that there are nine blacks and three whites on the jury. The cases that follow Batson also apply to whites. You reach a point where you have an all black jury. Is that what they are asking *Page 913 
for? Put three people back on there, have an all black jury. Then what have we done as far as discrimination against the white people? I don't think this shows any discrimination whatsoever when — and I know population percentages don't have any bearing anymore; but when the population of a county is approximately 25% black, 75% white, and you've got just the opposite or flip-flop of that on the jury that's going to be sitting, you've got 75% black and 25% white, it reaches that point where we are striking blacks just to maintain some semblance of a racial disparity on the jury. That is all I've got to say at this time.
 "[McCray's counsel]: Your Honor, in response, and with all due respect, this Court is bound to follow the law that there is. And the law states that those percentages are not what you consider, that they have to have race-neutral reasons for striking African Americans from a jury panel. And the fact is that he had just told you on the record that he struck blacks for the simple reason to keep whites on the jury, and that is —
 "[Prosecutor]: No, Sir. No, sir, that is not what I said. I said I struck whites to keep from violating their constitutional right of being on the jury too. Because if I hadn't have, we would have had an all black jury. And the law is just as clear on that. You can't do that either. If he wants to get into it, how many whites did [McCray's counsel] strike? And how many blacks did he strike?
 "[McCray's counsel]: They are subject to file a motion if they want to on that ground, your Honor. They have the right to ask for a Batson motion. But this is my Batson motion at this point in time. I believe I've shown a prima facie case.
 "THE COURT: Okay. Does the State feel like, at this point, it would be more comfortable in proceeding further or not?
 "[Prosecutor]: No, sir. We don't feel like we need to proceed at this point in giving any reasons.
 "THE COURT: Okay. In other words, the State is contending that no prima facie case has been made —
"[Prosecutor]: Yes, sir. Exactly.
 "THE COURT: — in regards to the fact that there are a good number of blacks on the jury, at this time; is that correct? Is that what you are saying?
 "[Prosecutor]: He's the one that counted it up and said there was 9 and 3.
 "[McCray's counsel]: I don't dispute there's 9 blacks and 3 whites on the actual 12-member jury. There's 1 alternate and 2 whites as far as the 3 alternates.
"THE COURT: Okay. Anything else?
"[McCray's Counsel]: No, sir.
"THE COURT: From the Defense or the State?
"[Prosecutor]: No, sir.
 "THE COURT: Okay. I'll deny the Batson motion, then, at this time."
(R. 368-72.)
Although the trial court, in denying McCray's Batson motion, made no express finding on the question of a prima facie case of purposeful racial discrimination, we have held that even in the absence of a finding of a prima facie case by the trial court, if the prosecutor offers explanations for the state's peremptory challenges, this court will review those explanations. Burton v.State, 651 So.2d 641, 648 (Ala.Cr.App.), aff'd, 651 So.2d 659 (Ala. 1994), cert. denied, 514 U.S. 1115, 115 S.Ct. 1973, 131 L.Ed.2d 862
(1995); Hart v. State, 612 So.2d 520, 524 (Ala.Cr.App.), aff'd,612 So.2d 536 (Ala. 1992), cert. denied, 508 U.S. 953, 113 S.Ct. 2450, 1240 L.Ed.2d 666 (1993). It is apparent from the prosecutor's statements following McCray's Batson motion that race was a factor the state considered in exercising its peremptory strikes against black prospective jurors. Indeed, the clear significance of the prosecutor's statements was that, in *Page 914 
McCray's case, the state had used peremptory challenges against black prospective jurors with the purpose of avoiding an all-black jury and ensuring that whites would be represented on the jury. This amounted to an admission that race was the motivating and deciding factor in the state's removal of at least one prospective black juror from the venire. This practice was condemned inBatson. "Competence to serve as a juror ultimately depends on an assessment of individual qualifications and ability to consider evidence presented at a trial. SeeThiel v. Southern Pacific Co., 328 U.S. 217, 223-24,66 S.Ct. 984, 987-88, 90 L.Ed 1181 (1946). A person's race simply 'is unrelated to his fitness as a juror.' Id., at 227, 66 S.Ct., at 989
(Frankfurter, J., dissenting)." Batson, 76 U.S. at 87,106 S.Ct. at 1718.
In Miesner v. State, 665 So.2d 978 (Ala.Cr.App. 1995), we addressed a Batson claim similar to the one raised by McCray. InMiesner, the state had used five of its seven peremptory strikes to remove blacks from the venire. The trial court directed the state to give its reasons for the strikes, and in giving his reasons, the prosecutor admitted that he struck two black females from the venire because he sought to avoid an all-black jury and because he "wanted some white people on the jury." Miesner, 665 So.2d at 980-81. The prosecutor in Miesner, like the prosecutor in this case, declared his intent to exercise his peremptory challenges so as to avoid an all-black jury. Unlike the prosecutor in this case, however, the prosecutor in Miesner also offered a race-neutral explanation, age, for his strikes against the two black females on the venire. Nevertheless, we found that the state had violatedBatson, and we reversed the defendant's conviction, deciding by implication that a race-neutral reason offered in addition to a race-based reason does not cure a Batson violation.
Shortly after we decided Miesner, the Alabama Supreme Court, in Ex parte Sockwell, 675 So.2d 38 (Ala. 1995), cert. denied,519 U.S. 838, 117 S.Ct. 115, 136 L.Ed.2d 67 (1996), noted that, for purposes of Batson, a peremptory challenge will not be upheld where the prosecutor articulates both a race-based reason and a race-neutral reason for the strike. Thus, in Alabama, a race-neutral reason for a peremptory strike will not "cancel out" a race-based reason. Ex parte Sockwell, 675 So.2d at 41. Accordingly, even if the state were to come forward with race-neutral explanations for its strikes against the black potential jurors on McCray's venire, the peremptory strikes would not be upheld, because the state also acknowledged that race was a factor in its exercise of those peremptory strikes.
"[T]he trial court's findings as to whether the defendant has established purposeful discrimination are to be accorded great deference on appeal, Batson, supra, 476 U.S. at 98,106 S.Ct. at 1274, and should be reversed on appeal only if they are clearly erroneous. Ex parte Branch, 526 So.2d 609 (Ala. 1987)." Ex parteLynn, 543 So.2d 709, 712 (Ala. 1988), cert. denied, 493 U.S. 945,110 S.Ct. 351, 107 L.Ed.2d 338 (1989). Here, because the prosecutor stated that race was a factor in the state's exercise of its peremptory strikes against black potential jurors, we must hold that the trial court's denial of McCray's Batson motion was "clearly erroneous." Accordingly, McCray's convictions are due to be reversed.
Although we reverse on this issue, we will briefly address McCray's argument concerning the validity of the indictments, because those indictments may serve as the basis for a new trial on the charges of capital murder and theft of property. We will also address the propriety of McCray's sentences.
 II.
McCray contends that the exposure of the grand jury in his case to certain information rendered his indictments void. Therefore, he argues that the trial court erred in denying his motion to dismiss the indictments. *Page 915 
McCray had been previously indicted on the same charges, but because there had been a finding of racial discrimination in the selection of the grand jury foreperson, his case, along with numerous other cases in Houston County with indictments handed down by the same grand jury, was remanded for reindictment. McCray argues that because the prosecutor informed the members of the new grand jury that McCray had been previously indicted on the same charges and further informed the grand jury members of the reason McCray's case had been remanded for reindictment, the new grand jury was tainted, and its return of the new indictments against McCray became a "mere formality." (Appellant's brief at p. 39.)
McCray alleges that the prosecutor informed the grand jury members of the previous indictments for the sole purpose of diminishing their sense of duty to consider the evidence. He argues that grand jury members may have considered the reason for his reindictment to be a mere "technicality," rather than evidence of a flaw in the prosecution's case, creating, he says, the "inescapable likelihood" that the jurors would not fully consider the evidence. (Appellant's brief at p. 42.)
The record reveals that a hearing was held on McCray's motion to dismiss the indictments. McCray subpoenaed the 18 members of the grand jury that returned the new indictments against him. Of those 18 grand jurors, 7 appeared in court pursuant to the subpoenas. McCray's counsel informed the trial court that all of the grand jurors may not have received service, but McCray indicated he was satisfied that the 7 grand jurors who appeared represented a fair cross-section of the grand jury for purposes of his motion to dismiss the indictments. The prosecutor acknowledged that members of the grand jury had been informed that McCray's case had been remanded for reindictment and that they had also been informed of the reason the case had been remanded. The prosecutor stated that this information was provided to the grand jurors so they would know why their docket had been increased by some 50 to 60 cases. The prosecutor also stated that he had informed the members of the grand jury that the fact that the case had been remanded should have no effect on their decision whether to indict McCray, and that their decision should be based on the evidence presented to them during the grand jury proceedings.
The trial court questioned the seven grand jurors present at the hearing, five of whom indicated that when they returned the new indictments they were aware that McCray had been previously indicted on the same charges of capital murder and theft of property. These five grand jurors stated that their knowledge of this fact did not influence their decision to indict McCray and that their decision was based solely on the evidence presented at the grand jury proceedings. All seven of the grand jurors present at the hearing indicated that when they returned the new indictments they were aware that any prior indictments had been set aside because of discrimination in the selection of the grand jury foreperson; all stated that knowledge of this fact had no effect on their decision to indict McCray.
We find nothing to indicate that the grand jury that returned the new indictments against McCray was "tainted" so that the grand jury members could not fairly consider the evidence against McCray when deciding whether to indict him. Contrary to McCray's claim in his brief to this Court, there is nothing in the record to show that the grand jury was prejudiced or biased against him as a result of their knowledge of the previous indictments. Furthermore, even if we were to assume that the grand jury had been improperly informed that McCray had been previously indicted for the same charges and that his case had been remanded for reindictment because of discrimination in the selection of the grand jury foreperson, we would still find no basis to dismiss the indictments. The Fifth Amendment to the United States *Page 916 
Constitution does not require that the evidence presented to a grand jury be completely without taint. Ex parte Radford,557 So.2d 1288, 1291 (Ala. 1990), citing Costello v. UnitedStates, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed 397 (1956). "`If legal evidence is given [sufficient to support an indictment], . . . an indictment is not subject to be quashed because there was illegal evidence also given.'"Ex parte Radford, 557 So.2d at 1291, quoting Fikes v.State, 263 Ala. 89, 81 So.2d 303, 310 (1955). For the reasons stated, we hold that the trial court properly denied McCray's motion to dismiss the indictments.
 III.
McCray contends that his sentences were improperly enhanced under the Habitual Felony Offender Act by the use of three prior felony convictions in the State of Florida, which, he says, that were based upon nolo contendere pleas. McCray is correct. The Alabama Supreme Court has held that a conviction based upon a plea of nolo contendere cannot be used in Alabama to enhance punishment under the Habitual Felony Offender Act. Ex parte Jenkins,586 So.2d 176, 177 (Ala. 1991). See also, e.g., Kain v. State,700 So.2d 355, 356 (Ala.Cr.App. 1996); McHarris v. State,678 So.2d 259, 260 (Ala.Cr.App. 1996). This court and the trial court are bound to follow the holdings of the Alabama Supreme Court. Barring an intervening change in the law, in the event McCray is retried and convicted, his prior Florida convictions based upon pleas of nolo contendere cannot be used to enhance his sentence under the Habitual Felony Offender Act.
For the reasons stated above, the judgment of the trial court is reversed and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMILLAN, COBB, and BASCHAB, JJ., concur; BROWN, J., concurs specially with opinion.
[1] The state had 17 peremptory strikes in selecting the jury, and 2 peremptory strikes in selecting alternate jurors. Of the state's 7 strikes against black jurors, 6 were used in the actual selection of the jury and 1 was used in the selection of the alternates.