The appellant, Clennan Ray Carroll, was convicted of the unlawful possession of controlled substance, a violation of § 13A-12-212, Code of Alabama 1975. The appellant was sentenced to serve three years' imprisonment; his sentence was suspended, and he was placed on three years' probation.
 I
The appellant argues that the trial court erred by denying his motion to suppress certain evidence because, he says, his arrest for disorderly conduct was unlawful and the resulting seizure of his stomach contents was illegal.
During the hearing on the appellant's motion to suppress, the State presented the testimony of Officer Vernon Anderson of the City of Dothan Police Department, who testified that, on the night of the offense, he was involved in the HUD detachment assigned to patrol all HUD housing areas. He testified that these areas are known to be high crime areas, especially as to illegal drug activity, burglary and car thefts. On the night of the offense, Officer Anderson, while on patrol, noticed a vehicle that was committing a number of traffic violations. Officer Anderson testified that at approximately midnight he and a passenger in his patrol vehicle, a military police officer, observed the vehicle make a turn without using its turn signal and fail to stop at a stop sign. Officer Anderson said that he then turned on the blue lights on his patrol car and stopped the vehicle. Anderson and the military police officer got out of the patrol car and Anderson approached the driver's side door of the stopped vehicle, as the military police officer approached the passenger's side.
Officer Anderson testified that two individuals were in the vehicle and he observed the driver attempt to pull what appeared to be a screwdriver from the steering column. He testified that using a screwdriver in such a manner was common among car thieves and that it alerted him to the possibility that the vehicle was stolen. Officer Anderson testified that he asked the driver to produce some identification, which he was unable to do; however, he testified that he knew the driver *Page 49 
because he had come into contact with him previously. Officer Anderson testified that he also asked the appellant, who was the passenger in the vehicle, for identification and that the appellant failed to respond. He stated that he asked the appellant "a couple of times" for identification, but that he failed to answer; Officer Anderson then noticed that he was "shifting something in his month." He stated that, "Through my experience on the street, I know that a lot of drug dealers or drug users sometimes will conceal contraband in their mouth from the presence of an officer." Officer Anderson said that he then asked the appellant repeatedly to open his mouth, and that he also asked him what he had in his mouth. He testified that the appellant then "dropped his head below his arms on the dash," apparently attempting to conceal his face; however, Officer Anderson testified that he "could see his temples and his jaws moving as [if] he was trying to chew something and keep it from view from me." Officer Anderson then asked the appellant to open his mouth and "spit it out." He testified that the appellant failed to comply and that the military police officer began similarly instructing the appellant but also received no response.
The military police officer, who was on the appellant's side of the vehicle, then attempted to open the door, but there was no handle on either side of the car door. He asked the appellant to open the door, but the appellant did not respond. The military police officer then reached into the vehicle and grabbed the appellant in order to get him out of the car. Officer Anderson testified that he instructed the driver to keep his hands on the steering wheel and that he then walked to the driver's side of the vehicle and assisted the military officer in getting the appellant out of the vehicle.
Officer Anderson further testified that he was concerned because he was uncertain as to whether there were any weapons in the car. He testified that, at the time of the stop, he believed that two felonies had possibly been committed; specifically, car theft and possession of contraband. Officer Anderson testified that he and the other officer eventually pulled the appellant through the window and placed him on the ground on his back. A struggle then ensued and Officer Anderson testified that the appellant "was fighting [them] pretty hard." The appellant eventually swallowed what he had in his mouth and stated, " 'I ain't done nothing, I ain't swallowed nothing.' " Officer Anderson testified that, although the appellant continued to fight, he finally got control over the appellant and stood him up. Officer Anderson then informed the appellant that he was under arrest for disorderly conduct and placed him against the patrol car. He stated that he still suspected that the appellant had swallowed contraband and told the military police officer that he intended to contact a narcotics officer concerning whether they could have the appellant's stomach pumped. He stated that as he then reached for his handcuffs, the appellant spun around, struck him in the chest, and ran away. A chase and another struggle then ensued. During the struggle, the Officer Anderson's gun discharged twice and the appellant was shot. Officer Anderson testified that, at that point, he had been unable to search the appellant and did not know whether he was armed.
Several rounds of re-cross examination and re-direct examination were conducted as to this witness. Defense counsel argued that the narcotics, which were eventually retrieved after the appellant's stomach was pumped at the hospital, should be suppressed because, he argues, they were the product of an illegal arrest. However, the record indicates that the evidence was properly seized pursuant to a legal arrest; moreover, the fact that the officer failed to obtain a search warrant does not make the seizure illegal.
The vehicle in which the appellant was a passenger was originally stopped for violating a traffic law. "Once a routine traffic stop is made, the officer may either keep the driver of the vehicle in the car or exercise his discretion to require the driver to exit the vehicle, even though the officer may lack a particularized reason for believing that the driver possesses a weapon. New York v. Class, 475 U.S. 106,106 S.Ct. 960, 89 L.Ed.2d 81 (1986)." Smith v. State, 606 So.2d 174, *Page 50 
176-77 (Ala.Cr.App. 1992). It is clear that, after stopping a vehicle for a routine traffic violation, an officer may ask a driver for his driver's license. Hawkins v. State,585 So.2d 154, 155 (Ala. 1991). In this case, Officer Anderson's observation of the appellant, a passenger in the vehicle, moving something in his mouth, failing to respond, chewing action, and concealing his face, especially in light of Officer Anderson's particularized knowledge concerning narcotics, were indicia of guilt by furtive gestures. Cf., Ex parte Tucker,667 So.2d 1339 (Ala. 1995). The appellant's actions were clearly intended to dispose of an object and conceal it from the officer's view.
 "The United States Supreme Court, in Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917
(1968), has stated:
 " 'Deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest. Brinegar v. United States, 338 U.S. 160 [69 S.Ct. 1302, 93 L.Ed. 1879] (1949); Husty v. United States, 282 U.S. 694 [51 S.Ct. 240, 75 L.Ed. 629] (1931); see Henry v. United States, 361 U.S. 98, 103
[80 S.Ct. 168, 171, 4 L.Ed.2d 134] (1959).'
 "392 U.S. at 66-67, 88 S.Ct. at 1904-05. See also Molina v. State, 533 So.2d 701, 707
(Ala.Cr.App. 1988), cert. denied, 489 U.S. 1086, 109 S.Ct. 1547, 103 L.Ed.2d 851 (1989).
 " 'Thus, if the police see a person in possession of a highly suspicious object or some object which is not identifiable but which, because of other circumstances, is reasonably suspected to be contraband, and then observe that person make an apparent attempt to conceal that object from police review, probable cause is then present.'
 "W. LaFave, Search and Seizure § 3.6(d) at 58 (2d ed. 1987). See also Lewis v. State, 518 So.2d 214, 218 (Ala.Cr.App. 1987)."
Jones v. State, 616 So.2d 949, 950-51 (Ala.Cr.App. 1993).
Thus, Officer Anderson had sufficient probable cause to arrest the appellant when he did so. Moreover, the appellant's arrest for disorderly conduct was proper, because the appellant had failed to obey the officer's instructions to get out of the vehicle and, thus, required the officer to forcibly remove him from the vehicle; additionally, his struggling and fighting with them gave them grounds for the arrest. See Ex parteThomas, 666 So.2d 855, 857 (Ala. 1995) (wherein the officer entered the defendant's property after having been called by his wife concerning an assault; the defendant came out of his house and asked why the officers were on his property; the officers told the defendant that he could not leave until they had spoken with the wife; the defendant then became belligerent, cursing and ordering the officers off his property; eventually the defendant struck one the officers in the chest.) See A.A.G. v. State, 668 So.2d 122
(Ala.Cr.App. 1995). Thus, the arrest was legal.
Moreover, as to the seizure of the cocaine, the record indicates that while the appellant was in the hospital following the shooting his stomach was pumped. However, there was testimony that the police were attempting to obtain a warrant to have the appellant's stomach pumped when they discovered that the appellant's stomach had already been pumped. The nurse testified that she did so upon orders of the doctor. The physician testified that he ordered the appellant's stomach to be pumped as part of routine practice in cases where the patient has sustained paralytic injuries. The doctor testified that he ordered this procedure after he had reviewed the appellant's medical records and before he had spoken to any police officers. He stated that the procedure was a precautionary measure used to protect the patient's airway when the patient had suffered a paralytic injury and in preparation for surgery. When the police officers discovered that the appellant's stomach had been pumped and that the contents of his stomach were to be disposed of, an officer requested the contents, which the medical personal had placed in a sealed container. A piece of a *Page 51 
white substance was found in the stomach contents, and it was taken to the forensic lab to be analyzed. Thus, in the present case, there was no search and seizure by the State.Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826,16 L.Ed.2d 908 (1966).
In a similar fact situation, the Alabama Supreme Court has held that where a urine drug screen was ordered by a physician, rather than as a result of police action, the results of the drug screen were admissible. Ex parte Radford, 557 So.2d 1288,1290-91 (Ala. 1990). This court has also consistently held that "where the blood is seized only for medical purposes and not in furtherance of a criminal or accident investigation, the blood alcohol tests results are admissible at trial." Veasey v.State, 531 So.2d 320, 322 (Ala.Cr.App.), cert. denied,531 So.2d 323 (Ala. 1988). See also Russo v. State, 610 So.2d 1206
(Ala.Cr.App. 1992); Ex parte Radford, 557 So.2d 1288, 1291
(Ala. 1990).
The evidence of the cocaine derived from the appellant's stomach as a result of a medical procedure was properly admitted at trial; therefore, the trial court did not err in denying the motion to suppress.
 II
The appellant argues that the trial court erred in denying his discovery motion made pursuant to Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, the appellant argues that the State suppressed evidence that he alleges would impeach Officer Anderson's testimony by showing alleged discrepancies between his testimony in the present trial and a civil suit involving Officer Anderson and the appellant. The appellant asked the trial court to conduct an in camera inspection of the documents containing the testimony from the civil suit. The appellant asked that, if the trial court found discrepancies in Officer Anderson's testimony, it would order the production of the records for the appellant's use in impeaching Officer Anderson. The trial court told the appellant that it would review the records. A discussion ensued concerning these records, following which the trial continued. The appellant failed to obtain any subsequent ruling from the trial court. Because the record is devoid of any ruling by the trial court on the discovery request for these alleged inconsistent statements, this matter is precluded from review. See Donahoo v. State, 552 So.2d 887 (Ala.Cr.App. 1989).
 III
The appellant argues that the trial court improperly refused to give his requested charge on resisting an unlawful arrest. The appellant's requested charge stated that an individual may use reasonable force to resist an unlawful arrest. The trial court held that the charge was an incorrect statement of the law and did not relate to the facts of the case, specifically, a charge of possession of a controlled substance.
Because this is a case involving possession of a controlled substance, rather than disorderly conduct, the requested charge would be confusing and misleading to the jury. Hemphill v.State, 669 So.2d 1020 (Ala.Cr.App. 1995); Ex parte Wilhite,485 So.2d 787 (Ala. 1986). Moreover, as determined previously in Part I of this opinion, the arrest in the instant case was not unlawful.
 IV
The appellant argues that the trial court reversibly erred by failing to grant his motion to record the voir dire and failing to grant his motion to exclude the jury based on the impermissible striking of black jurors, in violation ofBatson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986).
Pursuant to Rule 19.4, Ala.R.Crim.P., in all non-capital cases a court reporter is required to transcribe the voir dire of the jury and the arguments of counsel "if directed to do so by the judge." Moreover, according to the committee comments to this rule, this provision supersedes § 12-17-275, Code ofAlabama 1975. A review of the record in the present case reveals that portions of the voir dire are contained in the record. Because Rule 19.4, Ala.R.Crim.P., vests the trial court with discretion as to whether these proceedings should be transcribed, and because in the instant case, the appellant's claim of discrimination in the *Page 52 
striking of the jury may be determined by an examination of the record, there was no abuse of discretion.
The record indicates that the jury panel included six blacks, one of whom was removed for cause. The prosecutor used four of his peremptory strikes against black veniremembers. The trial court determined that the appellant made a prima facie showing of purposeful discrimination and required the prosecutor to give reasons for his strikes. The prosecutor responded that two of the blacks were struck concerning a question he asked about the O.J. Simpson case.[1] The prosecutor stated that he believed, based on the motions filed by the appellant concerning Officer Anderson's testimony and the pretrial suppression motion based on an alleged unlawful arrest, that the appellant would base his case on police misconduct; such as the planting of evidence. Thus, based on the facts and circumstances of this case, he asked during voir dire examination if the jurors believed that the evidence in the O.J. Simpson case was tampered with or planted by the police officers, or whether there was other police misconduct. He struck the three blacks who stated that they did believe misconduct had occurred, as well as a white female juror who responded similarly.[2] The striking of white jurors for the same reason as black jurors, indicates a racially neutral reason. Bedford v. State,548 So.2d 1097, 1098 (Ala.Cr.App. 1989); Oliver v. State,526 So.2d 892, 894 (Ala.Cr.App. 1987); McGahee v. State, 554 So.2d 454,462 (Ala.Cr.App. 1989), aff'd, 554 So.2d 473 (Ala. 1989). Moreover, the fact that the reason was closely related to the facts and circumstances of this case, also indicates neutrality. Ex parte Branch, 526 So.2d 609, 624 (Ala. 1987).
Another black juror was struck because she stated that she had served on a jury in a previous criminal case that returned a not guilty verdict. She further indicated that she did not wish to serve on the jury and that she might be distracted from listening to the evidence. These reasons were sufficiently race-neutral. See Childers v. State, 607 So.2d 350
(Ala.Cr.App. 1992) (holding as race-neutral a strike of a potential juror who had previously served on a jury that returned a not guilty verdict); Kelley v. State, 602 So.2d 473,476 (Ala.Cr.App. 1992) (wherein this court held as sufficiently race-neutral a prosecutor's reason for striking a potential juror that the juror had indicated that he or she might have a problem serving on the jury.)
The prosecutor's last strike against a black potential juror was entered because the juror stated that he was personally acquainted with the appellant and was friends with the appellant's father and family. The prosecutor stated that he observed the potential juror sitting with the appellant's father in the courtroom. He also stated that the juror responded to his question concerning whether he wished to serve on the jury and could give the trial his complete attention, stating that he could not do so. The strike of a potential juror because he knew the appellant or the appellant's family is a valid race-neutral reason that does not violate Batson v.Kentucky, supra. Brown v. State, 623 So.2d 416
(Ala.Cr.App. 1993); Williams v. State, 620 So.2d 82
(Ala.Cr.App. 1992).
There is no indication that the prosecutor's exercise of his peremptory challenges was racially motivated, and the trial court's decision on this matter is not clearly erroneous. Therefore, the trial court's denial of the appellant's motion made pursuant to Batson v. Kentucky, supra, was proper.
AFFIRMED.
All judges concur.
[1] The reference to a highly publicized murder trial in California in which the defendant, O.J. Simpson, a celebrity and former football player was accused of murdering his former wife and a male friend of hers. He was acquitted.
[2] The record indicates that the prosecutor used his first three strikes for this reason; the first strike being entered on this ground against the white female. *Page 53