On Rehearing Ex Mero Motu

McMILLAN, Presiding Judge.
This Court’s opinion of June 30, 2000, is withdrawn and the following is substituted therefor.
The appellant, Marcus Antonio Jones, appeals from his conviction for murder, a violation of § 13A-5-40(a)(2), Ala.Code 1975. He was sentenced to 99 years’ imprisonment, and was ordered to pay $9,500 restitution, attorney fees, and court costs.
I.
The appellant argues that the trial court erred in failing to ensure that the jury was properly sworn, pursuant to § 12-16-170, Ala. Code 1975.
An examination of the record reveals that the members of the jury venire were given an oath in which they swore to truthfully answer all questions propounded to them. The veniremembers then took an additional oath to “truly try all the issues which may be submitted ... and render true verdicts according to the evidence .... ” After allowing the parties to strike the jury, the trial court informed the parties that it would allow the jurors to go home, and it would not swear them in on the final oath until the following morning. The record further reveals that on the following morning, the trial court’s attention was diverted to a report in a morning newspaper that the victim’s brother had been arrested for possessing explosive devices. The trial court and the attorneys then discussed security measures and any pending motions. After questioning the jurors as to whether they had read or had discussed anything involving the case, the trial court proceeded with opening instructions, without administering the final oath. The record indicates that the appellant did not object to the trial court’s failure to administer the final oath, but rather first noted it in his motion for a new trial.
Although the trial court failed to administer the final oath to the petit jury, no reversible error occurred. The appellant failed to object on this ground at trial, and the venire oaths were given to each member of the petit jury. See Ex parte Deramus, 721 So.2d 242, 244 (Ala.1998) (“ ‘any defect in the administration of the oath’ is reversible error only if ‘some objection was taken ... during the progress of the trial, based on [that] defect’ ”, quoting § 12-16-173, Ala.Code 1975). Moreover, the record establishes that the venire oaths given to the veniremembers, which contained all those persons who later served on the petit jury, tracked the language of § 12-16-170, Ala.Code 1975, and Rule 18.5, Ala. R.Crim.P. Ex parte Deramus; Hellums v. State, 630 So.2d 477 (Ala.Crim.App.1993).
*903 II.
The appellant, a black male, argues that the trial court erred when it denied his Batson objection, made pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), on grounds that the State systematically and purposefully struck all four black veniremembers.
The record indicates that the trial court, after observing that all blacks had been removed from the venire, found that a prima facie case of racial discrimination had been established, and instructed the State to give its reasons for the strikes. The State explained that it had struck juror 25, a black male, for the following reasons: he had numerous convictions for issuing worthless checks; he had reported late for jury duty; and he had been arrested by an investigator in the prosecutor’s office. See Hall v. State, 816 So.2d 80 (Ala.Crim.App.1999) (having had “contact” with the bad-check unit of a prosecutor’s office is a race-neutral reason for striking a juror). The State struck juror 40, a black female, because she knew the appellant’s mother who was a witness in the case. See Carroll v. State, 701 So.2d 47, 52 (Ala.Crim.App.1996) (Striking a potential juror because he or she knows the defendant or his family is a race-neutral reason). Juror 55, a black female, was also struck because she had 15 worthless check charges pending against her. Juror 159, a black male, was struck because he was related to the appellant’s mother and had failed to complete the juror questionnaire; Additionally, juror 159 knew another defendant whose case was on the docket, and he was scheduled to speak at a friend’s funeral the following day. Hall, supra; Carroll, supra.
After considering the State’s reasons for its peremptory strikes, the trial court found that the reasons were race-neutral and it denied the motion. We find no abuse of the trial court’s discretion in denying the appellant’s Batson motion. Bone v. State, 706 So.2d 1291 (Ala.Crim.App.1997).
The appellant’s argument on appeal — that he was prejudiced by the fact that another defendant’s jury was selected from the venire before his jury was selected and that, therefore, he had less black veniremembers to choose from — was not preserved for appellate review. Toombs v. State, 739 So.2d 550 (Ala.Crim.App.1999). In fact, the record indicates that the trial court stated that if the parties had no objection, it would allow the other judges to get their juries first, because selection in the appellant’s murder trial would take more time because of the necessarily thorough questioning of the prospective jurors. Because no objection was made by the appellant to the method of jury selection, his argument is procedurally precluded from appellate review.
III.
The appellant argues that the State presented insufficient evidence to sustain his murder conviction. Specifically, he argues that the evidence was completely circumstantial and that, therefore, it was neither strong enough nor cogent enough to prove his guilt to a moral certainty. In support of his argument, he contends that there was no evidence that he possessed or fired the murder weapon or that he was at the scene of the crime. Additionally, he argues that the evidence, which included an alibi that he was with his girlfriend at the time of the murder, failed to exclude any inference consistent with his innocence.
rThe evidence presented by the State tended to show that the appellant and his accomplice, Kassey Reedy, had planned to rob the Grocery Outlet grocery store for at least one week before committing the crime. The twosome decided that it would *904 be easier to rob the store’s assistant manager, Ronald Jerkins, as he was making the night deposit at Regions Bank in Enterprise, rather than to rob him at the store. The appellant said that he preferred to be armed with a weapon to let the victim know that “he meant business,” so Reedy borrowed the murder weapon from his brother-in-law under the pretense of needing it for “protection.” On the night of the robbery-murder, the appellant and one of his girlfriends, Felicia White, went to Reedy’s residence and remained there until it was time to leave for the bank. Reedy and White dropped the appellant off near the bank, and then positioned themselves in a nearby parking lot to wait for the victim to arrive at the depository. The State presented the eyewitness testimony of Jeff Goolsby, who testified that he observed a struggle between two men at the Regions Bank depository and telephoned the emergency 911 number. He then heard a gunshot and saw a black male running away from the bank. He testified that the appellant’s physical build fit that of the murderer. After the robbery-murder, the appellant jumped into a car driven by Reedy and White and told them that he had struggled with the victim, that the victim had pistol-whipped him, and that he had then shot and killed the victim. After Reedy dropped the appellant off at a relative’s apartment, he and White disposed of the murder weapon on a county road. Upon returning to the apartment complex, Reedy and White saw the appellant throwing a bank deposit bag into an apartment dumpster. Reedy dropped the appellant and White off at a motel and went home. Later that evening, a friend of the appellant’s, Jonathan Sawler, saw the appellant place money under his pillow at the motel. On the following day, upon hearing that the murder weapon had been discovered, Reedy and White recovered the gun; they took it to another location and ultimately disposed of it by throwing it in a creek. Evidence was presented that approximately two weeks before the murder, the appellant had agreed to buy a used BMW automobile from Steve Suitor. A few days after the murder, the appellant returned to Suitor with a “big wad of cash,” and purchased the car. There was evidence that the appellant was not employed at the time of the offense. The appellant’s aunt, Diane Frazier, testified that the appellant visited her at her home in Atlanta after the murder, and admitted to her that he “would rob and kill again if he had to do so.” Reedy told his brother-in-law, Kenneth Williams, from whom he had borrowed the gun, about the events surrounding its disappearance. Williams then called and reported the information to the police.
The appellant testified in his own defense, stating that he had had no involvement in the robbery-murder. He testified that he had made no plans to rob anyone with Kassey Reedy, and that there was no truth to Reedy’s testimony about the crime. He denied telling his aunt that he had been involved in the crime. He denied ever seeing or firing the murder weapon. He stated that he was with one of his girlfriends, Angela Adams, at the time of the offense. He stated that he had received facial injuries on the night of the offense because he had tried to “break up a fight” between two of his girlfriends, Jackie Burney and Felicia White.
“ ‘In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.... ’ It is not the function of this Court to decide whether the evidence is believable beyond a reasonable doubt; rather, the function of this Court is to deter *905 mine whether there is legal evidence from which a rational finder of fact could have, by fair inference, found the defendant guilty beyond a reasonable doubt. Thus, ‘[t]he role of appellate courts is not to say what the facts are. [Their role] is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.’ ”
Ex parte Woodall, 730 So.2d 652, 658 (Ala.1998), quoting Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978) (citations omitted).
“ ‘A verdict on conflicting evidence is conclusive on appeal. Roberson v. State, 162 Ala. 30, 50 So. 345 (1909). “[W]here there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence offered by the defendant is in sharp conflict therewith and presents a substantial defense.” ’ ” White v. State, 546 So.2d 1014, 1017 (Ala.Crim.App.), cert. denied, 546 So.2d 1014 (1989), quoting Granger v. State, 473 So.2d 1137, 1139 (Ala.Crim.App.1985). “ ‘Circumstantial evidence alone can support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty.’ ” White v. State, 546 So.2d at 1017, quoted in Smith v. State, 727 So.2d 147, 172 (Ala.Crim.App.1998), aff'd, 727 So.2d 173 (Ala.1999), cert. denied, 528 U.S. 833, 120 S.Ct. 91, 145 L.Ed.2d 77 (1999).
We conclude that the evidence presented by the State is sufficient to support the jury’s guilty verdict.
IV.
The appellant argues that the trial court erred in allowing into evidence the uncorroborated testimony of his accomplice, Kassey Reedy. He argues that because the testimony was uncorroborated, it was insufficient to support his murder conviction. Section 12-21-222, Ala.Code 1975, states:
“A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient.”
In Ex parte Scott, 728 So.2d 172, 177 (Ala.1998), the Alabama Supreme Court, quoting this Court, discussed the test for determining the sufficiency of the corroborative evidence:
“ ‘ “The test for determining the sufficiency of the corroborative evidence ... is through a ‘subtraction process.’ The test is generally stated:
“ ‘ “ ‘[F]irst, the evidence of the accomplice must be eliminated, and then, if upon examination of all other evidence, there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration .... ’
“ ‘ “This rule is codified in Alabama Code 1975, Section 12-21-222.
“ ‘ “The corroboration which is sufficient to support the accomplices’ testimony must be of some fact tending to prove the guilt of the defendant.
“ ‘ ‘ . It must be of a substantive character, must be inconsistent with the innocence of the accused and must do more than raise a suspicion of guilt.’””
“ ‘ “ ‘[E]vidence which merely raises a conjecture, surmise, speculation, or suspicion that [the] accused is the guilty person is not ... sufficiently corroborative of the testimony of an accomplice to warrant a conviction.’ ” ’
*906 “This Court has defined the verb ‘to corroborate,’ in the context of § 12-21-222.
“ ‘To corroborate means to make more certain, to confirm, or to strengthen, and the corroborative testimony need not be strong or sufficient in and of itself to support a conviction. Corroborative evidence need not directly convict the accused of the crime, but need only tend to do so.’ ”
The trial court found in its findings of fact regarding the corroboration of Kassey Reedy’s testimony:
“1. Jeff Goolsby described the struggle at the bank, and described the attacker as a black male of medium height. He also testified that Jones could meet the description of the attacker.
“2. DeNita Pearson [Kassey Reedy’s girlfriend] testified that at dusk on the night of the robbery murder, she saw Jones and a woman at Reedy’s house.
“3. JoAnn Dorn [the wife of the appellant’s cousin] testified that late in the evening on the night of the robbery murder, Jones came to her apartment. He was injured, and he told her he had been in a fight. She said Jones was holding something beneath his pants leg.
“4. Jonathan Sawler testified that he saw Jones and Felicia White later that evening at a hotel. He saw Jones place some money under a pillow.
“5. Steve Suitor testified that during the last week of July, Jones talked with him about purchasing his car, and approximately one week later, Jones “returned with a large wad of cash.
“6. Diane Robinson Frazier [the appellant’s aunt] testified that Jones came to stay with her in Atlanta after the robbery/murder and, although they did not talk specifically about this crime, Jones told her that he would rob and kill again.”
Here, the State presented sufficient evidence, absent the accomplice testimony, that tended to connect the appellant with the commission of the crime and that, thereby, corroborated the testimony of the accomplice. Therefore, the trial court was correct in allowing the accomplice testimony to be submitted to the jury for its consideration.
The judgment of the trial court is affirmed.
OPINION OF JUNE 30, 2000, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
COBB, BASCHAB, SHAW, and WISE, JJ., concur.